**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| RONDA WESTERN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:18-cv-00164-AGF |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Ronda Western was not disabled,

and thus not entitled to disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401-434, or supplemental security income (SSI) under Title XVI of the

Act, 42 U.S.C. §§ 1381-1383f.   For the reasons set forth below, the decision of the

Commissioner will be affirmed.

### BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of

Uncontroverted Facts (ECF No. 13-1) and Defendant's Statement of Additional Facts

(ECF No. 22-2).[2]   Together, these statements provide a fair description of the record

---

1   After this case was filed, a new Commissioner of Social Security was confirmed.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is
substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

2  The Court also notes the clarifications supplied in Defendant's Response to Plaintiff's
Statement of Facts.   ECF No. 22-1.

before the Court.   Specific facts will be discussed as needed to address the parties'
arguments.

Plaintiff, who was born on April 9, 1966, originally filed an application for
disability insurance benefits on April 8, 2013, alleging a disability beginning March 16,
2013, due to fibromyalgia, depression, anxiety, and post-traumatic stress disorder
(PTSD).   Her application was denied at the administrative level, and she thereafter
requested a hearing before an Administrative Law Judge (ALJ).   On October 21, 2014,
the ALJ heard testimony from Plaintiff, who was represented by counsel, and from a
vocational expert (VE).   On December 10, 2014, the ALJ issued a decision finding that
Plaintiff had the residual functional capacity (RFC) to perform certain jobs that exist in
significant numbers in the national economy and was thus not disabled under the Act.
Upon judicial review, this Court remanded the case for further consideration and
development of the record with respect to opinions of Plaintiff's treating physician, Dr.
Jones.   *Western v. Berryhill*, 1:16-CV-00048 JAR, 2017 WL 1407118, at *1 (E.D. Mo.
Apr. 20, 2017).

The Appeals Council consolidated that case with Plaintiff's parallel SSI case and
sent the consolidated case back to the ALJ for a supplemental hearing, which was held
December 12, 2017.   By decision dated April 16, 2018, the ALJ found that Plaintiff had
the RFC to perform light work as defined by the Commissioner's regulations, except for
the following limitations:

She can occasionally climb ramps and stairs, but never climb ladders,

2

ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to extreme cold and extreme heat; however, she should avoid all hazards, including use of moving machinery and exposure to unprotected heights. Secondary to symptoms of fatigue and mental impairments, she is able to understand, remember, and carry out simple, routine and repetitive tasks in a work environment free of fast paced production requirements, involving only simple work-related decisions, with few if any workplace changes. She can tolerate no interaction with the public, but she may have frequent interaction with co-workers and supervisors. Tr. 787.

The ALJ next found that Plaintiff could perform certain light unskilled jobs listed in the Dictionary of Occupational Titles (DOT) (e.g., router, copy machine operator, collator operator), which the VE had testified a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.[3]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the whole record because the ALJ failed to allocate the proper amount of weight to certain aspects of the evidence, as further discussed below.

**The ALJ's Decision (Tr. 781-796)**

The ALJ found that Plaintiff has the following severe impairments: fibromyalgia, depressive disorder, anxiety disorder with panic attacks, PTSD, and insomnia. However,

---

3 Defendant notes that Plaintiff did not file exceptions to the ALJ's decision, nor did the Appeals Council initiate its own review, so Plaintiff has exhausted her administrative remedies, and the ALJ's decision is the Commission's final decision subject to judicial review.

he found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the Commissioner's regulations.[4]

In applying "paragraph B" criteria, the ALJ found that Plaintiff had only moderate limitations in understanding, remembering, or applying information, in interacting with others, in concentrating, persisting, or maintaining pace, or in adapting or managing herself. As such, the ALJ found that the paragraph B criteria were not satisfied.

In applying "paragraph C" criteria, the ALJ found that, despite Plaintiff's mental health issues, there was no evidence of marginal adjustment in that Plaintiff had not been hospitalized for psychiatric reasons and was able to adapt to her medical treatment schedule and appeared appropriately dressed and groomed at all appointments.

In determining Plaintiff's RFC and limitations, the ALJ reviewed the following evidence.

Plaintiff testified that she lived alone and could drive except when her fibromyalgia required extra medication, which was about once a month. She could not drive on the medication. She took Klonopin, Hydrocodone, and Cymbalta. She had insomnia and took medication to help her sleep. She could stand for 30 minutes, walk and sit for 30-45 minutes, and lift 5 pounds. She saw a therapist every two weeks. She

---

4 The ALJ further noted that Plaintiff has an additional medically determinable impairment of hypertension that is managed by medication. The ALJ also noted complaints of headaches and urinary incontinence, though not involving medical treatment. The ALJ found these impairments non-severe, and Plaintiff does not challenge these findings.

spent her days watching television and sleeping.   She could dress and bathe and do light housework.   She did not have any social activities.   She got headaches when stressed or anxious.

Plaintiff submitted function reports indicating that she had difficulty getting out of bed due to stiffness.   She cried and had panic attacks.   She was depressed.   She had difficulty bathing and dressing due to pain.   She hired help to do housework.   She could shop and manage her money.   She saw family and friends monthly.   She had trouble getting along with others.   She had difficulty with physical movement and with memory and concentration.   She could not lift more than 10 to 15 pounds.   She could follow instructions.   She felt overwhelmed and could not work.

The ALJ found that, although Plaintiff's impairments could reasonably be expected to cause her symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.

The ALJ noted that Plaintiff's treatment for fibromyalgia, depression, and anxiety was conservative and routine.   In April 2013, Plaintiff underwent a psychiatric evaluation with Dr. Caruso, revealing severe childhood trauma for which Plaintiff had never received therapy.   Although she had difficulty coping, Plaintiff was cooperative and fully oriented, she had good hygiene, and she had logical and linear thought.   She had a Global Assessment of Functioning (GAF) of 65, indicating mild symptoms.   She was prescribed Klonopin and Cymbalta.   Plaintiff received follow-up counseling therapy

with Shari Boxdorfer in April through June of 2013. Tr. 649-659. At that time, she had a GAF of 55, indicating moderate symptoms. She was prescribed Abilify and Ambien. She continued therapy roughly every two weeks in 2013 and monthly 2014, continuing to struggle with depression but maintaining GAF scores in the moderate range. The ALJ noted that Plaintiff's treatment remained unremarkable in 2014 insofar as Plaintiff's fibromyalgia, depression, and insomnia were managed with medication.

Plaintiff underwent a consultative medical examination by Dr. Barry Burchett in November 2014. Tr. 748-760. Plaintiff reported pain, fatigue, and stress urinary incontinence. She had normal gait, a stable appearance, full orientation, and a good memory. She had a full range of motion in her hands, with a grip strength of 4/5. She exhibited 16 of 18 fibromyalgia trigger points and 9 of 10 random control points. She had a full range of motion in her extremities, no tenderness in the spine, and normal sensation throughout. She could stand on one leg and walk unassisted. Dr. Burchett diagnosed Plaintiff with possible fibromyalgia and stress urinary incontinence. Dr. Burchett opined that Plaintiff could lift and carry 10 pounds, sit for 2 hours at a time and 8 hours in a day, stand or walk for 1 hour at a time and 3 hours in a day, reach, push, pull, and operate foot controls. She could never climb ladders, kneel, crouch, or crawl but could occasionally climb stairs and stoop and have exposure to environmental conditions. The ALJ assigned little weight to Dr. Burchett's opinion because he only examined Plaintiff once and because his opinion limiting Plaintiff to sedentary work contradicted Dr. Burchett's own examination findings and also did not correlate with her medical

records, which showed good range of motion, strength and sensation, and only routine treatment with medication.

The ALJ noted that Plaintiff's treatment notes were routine throughout 2015 to 2017. She regularly refilled her medications for pain and insomnia. She reported increased pain in 2017, but her physical examinations remained unchanged. As such, the ALJ found that the medical evidence was not consistent with, and did not support, Plaintiff's subjective complaints. While acknowledging that fibromyalgia is inherently subjective, the ALJ found it noteworthy that Plaintiff tested positive for 9 of 10 controls, indicating that her symptoms were not fully reliable. He further noted that examinations of Plaintiff's hands and spine were consistently normal. Additionally, the ALJ reasoned that Plaintiff's complaints were belied by the fact that she functions independently at home, her treatment has been routine and conservative and generally limited to medications, and the record lacked support for the alleged side effects of her medication.

Next, the ALJ addressed several medical source statements supplied by Plaintiff's treating physician, Dr. Jones. In 2011 (two years before the alleged onset date), Dr. Jones opined that Plaintiff had fibromyalgia, could work 4 hours per day, could stand for 30 minutes at a time and for one hour total, could sit for 30 minutes at a time and for 2 hours total, and could lift 5 pounds. Tr. 504. She could never balance, tolerate cold, or work around dangerous equipment, but she could bend, stoop, drive, tolerate dust, perform fine or gross manipulation, and tolerate heat and noise. Dr. Jones concluded that her pain was moderate.

In October 2012, Dr. Jones's statement was largely the same as in 2011 except that he characterized Plaintiff's fibromyalgia as severe and opined that she could stand for only 15 minutes, but she could occasionally lift 10 pounds. Tr. 557. Her pain remained moderate. Three months later, in January 2013, Dr. Jones opined that Plaintiff's fibromyalgia prevented her from working, she had difficulty moving, she was not improving with treatment, and her depression worsened as a result. Dr. Jones concluded that Plaintiff was "significantly disabled." Tr. 566. In September 2014, Dr. Jones again stated that Plaintiff had severe fibromyalgia, as well as depression and insomnia. Tr. 745-746. She could stand and sit for 30 minutes at a time and lift 5 pounds, but she could not work. She could bend, stoop, manipulate with her hands, and raise her arms. She was moderately impaired in understanding, remembering, and carrying out instructions and markedly limited in maintaining attention, but she had no impairments in social interactions or with simple instructions. In October 2014, Dr. Jones issued another medical statement indicating that Plaintiff had "significant" fibromyalgia and experienced pain, stiffness, sleep disturbance, and chronic fatigue. Tr. 747.

The ALJ assigned little weight to Dr. Jones's opinions for several reasons. The first three opinions pre-dated the alleged onset date. Dr. Jones offered no objective medical findings to support the worsening of Plaintiff's functional limitations over time. Treatment remained conservative. Physical examinations showed fibromyalgia tender points and tenderness, but those signs, the ALJ reasoned, do not correlate with a total inability to perform even sedentary work.

Dr. Brandhorst, a consulting psychiatrist, examined Plaintiff in May 2013 and found that she had mild restrictions in activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, and pace. He concluded that Plaintiff could perform simple, routine tasks on a sustained basis away from the public. Tr. 171-182. The ALJ assigned great weight to this opinion because it was consistent with Plaintiff's treatment records and daily activities, and later evidence did not suggest any additional limitations. Plaintiff had never been hospitalized for psychiatric care and her treatment was routine, managed with medication only.

The ALJ also mentioned the August 2016 opinions of agency medical and psychological consultants Drs. Steven Akeson and Fredric Simowitz, who found insufficient evidence that Plaintiff had any severe physical or mental impairments whatsoever. Tr. 919-933. The ALJ gave little weight to these opinions because the consultants did not consider Plaintiff's full history, which suggests that Plaintiff's impairments, while not disabling, are at least severe.

Finally, the ALJ gave great weight to Plaintiff's various GAF scores, which range from mild to moderate throughout the relevant time. The ALJ relied on these scores as the diagnostic and clinical tool to gauge Plaintiff's progress in a therapeutic context. The ALJ reasoned that Plaintiff's scores reflect satisfactory progress and a moderate degree of functioning, further supported by the absence of psychiatric hospitalization and more aggressive treatments.

Ultimately, the ALJ concluded that an RFC of light work, with the physical limitations previously described, was consistent with the evidence reflecting routine treatment through medication, and no hospitalizations, surgeries, or exacerbations. The ALJ noted unremarkable physical examinations showing only tender points, which would be accommodated by light work. Likewise, the ALJ noted unremarkable mental health examinations, revealing issues that were managed by medication and could be accommodated with work limitations such as simple tasks and limited social contact.

Based on the foregoing, the ALJ found that Plaintiff could perform certain light unskilled jobs listed in the DOT (router, copy machine operator, collator operator), which the VE had stated that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

In her brief before this Court, Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the whole record because: (1) the ALJ failed to consider Plaintiff's insomnia; (2) the ALJ erred in relying on Dr. Brandhorst's report because it lacked information about Plaintiff's psychiatric condition after May 2013; (3) the ALJ erred in discounting Plaintiff's complaints that her medication had side effects; (4) the ALJ erred in discounting Dr. Jones's opinions as to the severity of her fibromyalgia; and (5) the ALJ erred in discounting Dr. Burchett's opinion because it was based on objective testing of Plaintiff's grip strength. Plaintiff asks that the ALJ's

decision be reversed and remanded for an award of benefits.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

To be entitled to benefits, a claimant must demonstrate an inability to engage in

substantial gainful activity which exists in the national economy, by reason of a

medically determinable impairment which has lasted or can be expected to last for not

less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated

regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation

process to determine disability. The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity. If not, the Commissioner decides

whether the claimant has a "severe" impairment or combination of impairments. A

severe impairment is one which significantly limits a person's physical or mental ability

to do basic work activities. 20 C.F.R. § 404.1520(c). A special technique is used to

determine the severity of mental disorders. This technique calls for rating the claimant's

degree of limitations in four areas of functioning: activities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation. 20

C.F.R. § 404.1520a(c)(3).

     If the impairment or combination of impairments is severe and meets the duration

requirement, the Commissioner determines at step three whether the claimant's

impairment meets or is medically equal to one of the deemed-disabling impairments

listed in the Commissioner's regulations. If not, the Commissioner asks at step four

whether the claimant has the RFC to perform his past relevant work. If the claimant

cannot perform his past relevant work, the burden of proof shifts at step five to the

Commissioner to demonstrate that the claimant retains the RFC to perform work that is

available in the national economy and that is consistent with the claimant's vocational

factors – age, education, and work experience.   *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).   When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.   *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

### **RFC Finding and Weight of Medical Opinions**

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   However, "there is no requirement that an RFC finding be supported by a specific medical opinion."   *Id.*

#### Insomnia

First, Plaintiff contends that the ALJ failed to adequately consider her insomnia when determining her RFC.   Plaintiff cites *Weeks v Colvin*, where the ALJ's decision was silent about the claimant's medically documented insomnia, so this Court (J. Baker) remanded the case for analysis of whether and what extent the condition resulted in severe impairment and functional limitations.   1:14-CV-56 NAB, 2015 WL 5306183, at *10 (E.D. Mo. Sept. 10, 2015).   There, however, the ALJ did not mention the claimant's sleep impairment at all.   Here, by contrast, the ALJ recognized Plaintiff's insomnia as a severe impairment and noted that Plaintiff used medications to sleep.   Notwithstanding Plaintiff's testimony that she needed to sleep during the day, none of the doctors who submitted statements in this case, even Plaintiff's treating physician, opined that Plaintiff

needed to lie down during the day as part of her RFC limitations.

"An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (finding it "highly unlikely" that the ALJ failed to consider a physician's statement given specific references to the physician's notes). The ALJ specifically noted Plaintiff's insomnia as a part of Dr. Jones's diagnoses but found that Jones failed to provide any objective medical findings to support his opinion with respect to Plaintiff's functional limitations. On the contrary, the ALJ repeatedly observed that Plaintiff's impairments were being conservatively and routinely managed with medication, which included Zolpidem for insomnia. Tr. 731. Based on this record and the ALJ's accommodation of Plaintiff's functional limitations with respect to attention and concentration, the Court is not persuaded that the ALJ improperly failed to consider Plaintiff's insomnia when arriving at her RFC.

Brandhorst's 2013 Opinion

Second, Plaintiff contends that the ALJ erred in assigning great weight to Dr. Brandhorst's psychiatric opinion from May 2013 because it was stale. Plaintiff argues that the ALJ should have obtained a more current opinion. But the ALJ did obtain a subsequent opinion from another state agency psychological consultant, Dr. Akeson, who found in August 2016 that Plaintiff had no severe impairments whatsoever. The ALJ could have relied on this later opinion to Plaintiff's detriment but instead found that Brandhorst's earlier opinion was more consistent with the medical record as a whole,

14

including later evidence, insofar as Plaintiff's mental health treatment records did not indicate deterioration but only routine management through medication, with no hospitalizations or other significant psychiatric events. An ALJ may properly rely on an agency physician's opinion when it is consistent with other medical evidence. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).

Additionally, Plaintiff contends that the ALJ erred in relying on Dr. Brandhorst's opinion because it recommended physical limitations even though Brandhorst is not a medical doctor. But it does not appear that the ALJ relied on the physical aspects of Brandhorst's opinion. Rather, the ALJ's decision refers only to Brandhorst's assessment of Plaintiff's mental functions such as social interactions, concentration, persistence, and pace. The ALJ was free to give weight to these opinions. "The ALJ is not required to accept every opinion by an examiner but must weigh all the evidence in the record." *Id.* "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012).

<u>Plaintiff's Complaints</u>

Third, Plaintiff argues that the ALJ erred in discounting her subjective complaints simply because she could do housework. While Plaintiff is correct that a person's ability to engage in chores or hobbies does not demonstrate an ability to work (*Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000)), it is proper for an ALJ to consider a claimant's personal activities for purposes of assessing the credibility of her claims of incapacity. *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (no error where ALJ discounted

claimant's subjective complaints disabling pain where his activities and medication regimen suggested otherwise). This is precisely what the ALJ did here in finding that Plaintiff's allegations were belied by her ability to function independently. "Credibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).[5]

Plaintiff also asserts that the ALJ erred in finding that she suffered no side effects from her medication. While the record does reflect that Plaintiff discontinued certain medications due to side effects and cannot drive while on others, the ALJ did not completely ignore this issue as Plaintiff suggests. The ALJ noted that Plaintiff's medications made her drowsy and affected her ability to remember or concentrate. The ALJ merely concluded that the overall record did not support Plaintiff's subjective complaints to the disabling severity of her side effects. Moreover, it is clear from the ALJ's discussion of various medical statements and ultimately his determination of limitations on Plaintiff's RFC that the ALJ did consider Plaintiff's impairments with respect to fatigue, memory, and concentration. Again, an ALJ's failure to discuss specific evidence does not necessarily indicate that it was not considered. *Wildman*, 596 F.3d at 966. Given the ALJ's repeated references to Plaintiff's medications, the Court is satisfied that the ALJ considered their side effects.

---

5 Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective symptoms, and in any case Plaintiff's claim precedes the regulatory change.

<u>Dr. Jones's Opinions</u>

Fourth, Plaintiff contends that the ALJ erred in discounting Dr. Jones's opinions regarding the severity of her fibromyalgia.   Under the applicable social security regulations,[6] the opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018).   "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and the Commissioner "may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory."   *Id.*

The ALJ provided reasons for assigning little weight to Dr. Jones's opinions.   In particular, the ALJ noted that three of the opinions predated the date of onset and, while all opinions together reflect a progression of limitations, Jones offered no medical

---

[6]    For claims filed before March 27, 2017, which includes Plaintiff's claims, the regulations provide that if "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Social Security Administration] will give it controlling weight," and further provide that the Administration "will give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."   20 C.F.R. § 404.1527.

For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule.   The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency.   20 C.F.R. § 404.1520c.

findings to support his conclusions about Plaintiff's increasingly limited functioning. The ALJ also reasoned that Jones's assertion, in 2013, that Plaintiff was incapable of working and "significantly disabled" was inconsistent with the routine, conservative nature of her treatment over time, and moreover, Jones had no experience with the disability system that would bolster his usage of such terminology. *See, e.g.*, *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) ("A physician's opinion that a claimant is incapable of gainful employment is often not entitled to significant weight.");

In arguing that the ALJ erred in discounting Dr. Jones's opinions, Plaintiff cites *Weiter v. Astrue*, 4:09CV00702 FRB, 2010 WL 2802147 (E.D. Mo. July 15, 2010). In that case, the ALJ found the claimant's subjective complaints of pain from fibromyalgia not credible because, as here, they were not supported by objective medical evidence and because her treatment was conservative and routine. The court reversed, noting that the primary symptoms of fibromyalgia (i.e., pain and stiffness) are inherently subjective, and the condition is not treated through injections or surgery, so the absence of objective medical findings or more aggressive treatment was not a sufficient reason to discredit the claimant's complaints. While *Weiter* is correct that fibromyalgia cases typically lack the objective findings and escalating treatment for other conditions, such that the ALJ's reference to their absence here is not compelling alone, the Court nonetheless is not persuaded that *Weiter* prescribes reversal. In *Weiter*, the claimant's testimony about her symptoms and limitations was consistent with her statements to three doctors who treated her on multiple occasions over a long period, none of whom suggested malingering or

exaggeration.   Here, by contrast, the ALJ primarily reasoned that the numerous opinions of Plaintiff's sole treating physician, Dr. Jones, were internally inconsistent insofar as they provided no explanation for (and his treatment notes do not illuminate) the increase in functional limitations from one opinion to the next.   The ALJ acknowledged that fibromyalgia is subjective but found Dr. Jones's opinions inconsistent with physical examinations in the record, which indicated only tender points and tenderness, normal functioning of the hands and spine, and good range of motion, strength, and sensation. *Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (finding substantial medical evidence supporting the ALJ's conclusion that a claimant with fibromyalgia was capable of light work where treatment notes indicated normal muscle strength).   Additionally, Plaintiff tested positive for controls during her consultative examination and exerted a "questionable" finger squeeze effort.

In short, *Weiter* is distinguishable, and here the ALJ gave other reasons for discounting Dr. Jones's opinions, namely that the escalation of limitations lacked explanation.

Dr. Burchett's Opinion

Finally, Plaintiff contends that the ALJ erred in discounting Dr. Burchett's opinion, specifically by failing to consider the objective tests he administered to measure Plaintiff's grip strength.   The remainder of Plaintiff's argument on this issue simply re-asserts that her treatment records support her claim.

The ALJ did not totally disregard Dr. Burchett's opinion but gave a good reason

for assigning little weight to his ultimate conclusions with respect to Plaintiff's functional limitations, which the ALJ found too restrictive in light of the objective medical findings. Specifically, Dr. Burchett's examination revealed that Plaintiff: had a normal gait, no tenderness or swelling in the extremities, full range of motion in her hands and extremities; she could make a fist, oppose her fingers, write, and pick up coins; she had no tenderness or spasms in the spine; and she could stand on one leg, walk on heels and toes, squat to 90 degrees, and walk 50 feet without assistance. Plaintiff's grip strength was 4/5 but Burchett noted that her finger squeeze effort was questionable.

Plaintiff's suggestion that the ALJ committed reversible error simply by failing to weigh the grip test in her favor ignores this Court's standard of review. The ALJ is free to assign weight to the evidence. "The ALJ is not required to accept every opinion by an examiner but must weigh all the evidence in the record." *Mabry*, 815 F.3d at 391. The ALJ was entitled to believe Dr. Burchett's assessment that Plaintiff's effort was questionable.

## CONCLUSION

The ALJ was faced with a record containing varying medical source statements and medical evidence mostly lacking in clear objective findings about Plaintiff's physical impairment due to the subjective nature of fibromyalgia. Dr. Jones's opinions were given little weight because they failed to explain what changed from his earlier opinions indicating some functional ability to his later opinions indicating total disability. Dr. Burchett's opinion was given little weight because the restrictive functional limitations he

suggested were not supported by his own examination of Plaintiff or other medical evidence.   Dr. Simowitz's opposite opinion that Plaintiff had no severe impairment whatsoever was given little weight because it was inconsistent with the medical evidence. Ultimately the ALJ considered all of these opinions to some extent but assigned minimal weight to them because none could be reconciled with the full record.   This is a proper exercise of the ALJ's discretion.   There is no requirement that an RFC finding be supported by a specific medical opinion.   *Hensley*, 829 F.3d at 932.   *See e.g., Bennett v. Berryhill*, 4:17-CV-01583-SPM, 2018 WL 4593503, at *8 (E.D. Mo. Sept. 25, 2018) (affirming where ALJ assigned little weight to multiple opinions and ultimately found the claimant less limited than opined based on the medical record).

With respect to Plaintiff's mental impairments, the ALJ was entitled to assign great weight to Dr. Brandhorst's opinion as consistent with the whole record, including Plaintiff's GAF scores.

While the Court must take into account "evidence that both supports and detracts from the ALJ's decision, … as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently."   *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).   When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision. *Chaney*, 812 F.3d at 676.   On the present record, the Court cannot say that the ALJ's

decision fell outside the available zone of choice.   The ALJ's decision reflects that he considered the whole record, and his RFC determination is supported by substantial evidence therein.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.   A separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of September, 2019.